# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **DIANE W.,** [1]<br><br>　　　　Plaintiff,<br><br>　v.<br><br>**MARTIN O'MALLEY,**<br>**Commissioner of Social Security,** [2]<br><br>　　　　Defendant. | Civil Action No.<br>20-cv-3364-MAU |

## <u>MEMORANDUM OPINION</u>

Plaintiff Diane W. is a sixty-two-year-old woman who seeks Supplemental Security Income ("SSI") Benefits under the Social Security Act ("the Act") due to arthritis in both hands, arthritis in her left ankle, and pinched nerves in the bottom of both feet. *See* ECF No. 11, AR at 1–4, 245–51, 278–83.[3]  The Social Security Administration ("SSA" or "Commissioner") entered a final decision denying Plaintiff's claim on September 22, 2020.  AR at 1–4.  On appeal to this Court, Plaintiff seeks reversal or, alternatively, remand for reconsideration under 42 U.S.C. § 405(g).  ECF No. 13.[4]

---

[1]　　Plaintiff's name has been partially redacted in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf  (last visited Feb. 8, 2024).

[2]　　Pursuant to Federal Rule of Civil Procedure 25(d), the current Defendant has been substituted for his predecessor.  *See* Fed. R. Civ. P. 25(d).

[3]　　Citations to the Administrative Record, ECF No. 11, are referred to as "AR."  The Court will cite to the consecutive page numbers provided in the lower right-hand corner of each page of the AR.

[4]　　Relevant docket entries are: (1) the Administrative Record (ECF No. 11 and its attachments); (2) Plaintiff's Motion for Judgment of Reversal (ECF No. 13); (3) Defendant's

Plaintiff argues that the Administrative Law Judge ("ALJ") erred as a matter of law and rendered a decision that is not supported by substantial evidence.  ECF No. 13.  Specifically, Plaintiff asserts that the ALJ: (1) erroneously assessed Plaintiff's Residual Functional Capacity ("RFC") by failing to perform a functional assessment of her limitations; (2) failed to properly evaluate pertinent evidence about Plaintiff's difficulty standing and walking; and (3) improperly evaluated Plaintiff's subjective complaints.  *Id.*  The Commissioner responds that the ALJ made no errors in evaluating Plaintiff's claim under the Act and regulations, and that this Court must defer to the ALJ's findings.  ECF Nos. 14, 15.

Upon review of the Administrative Record, the Parties' briefs, and the relevant law, this Court will **GRANT** Plaintiff's motion (ECF No. 13) and **DENY** Defendant's motion for judgment of affirmance.  (ECF No. 14).

## BACKGROUND

### A. The Social Security Act

Congress enacted the Social Security Act to support individuals unable to work for reasons including disability.  *See e.g.*, *Smith v. Berryhill*, 139 S. Ct. 1765, 1771–72 (2019).  To qualify for SSI benefits under the Act, a claimant must show she is "disabled."  *See* 42 U.S.C. § 1382(a)(1). A person is "disabled" when she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a five-step test to evaluate whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  First, the ALJ must determine whether the claimant is

Opposition to Plaintiff's Motion for Judgment of Reversal and Motion for Judgment of Affirmance (ECF Nos. 14 and 15); and (4) Plaintiff's combined Opposition to Defendant's Motion for Judgment of Affirmance and Reply in support of Motion for Judgment of Reversal (ECF No. 17).

currently engaged in "substantial gainful activity." *Id.* Second, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment" or "combination of impairments." *Id.* Third, the ALJ decides whether the claimant's impairment(s) is among those disabilities in a regulatory listing that conclusively establishes disability. *Id.* Fourth, if disability was not established at step three, the ALJ assesses a claimant's RFC and past relevant work. *Id.* Fifth, the ALJ considers whether the claimant can perform other work in the national economy considering her age, education, work experience, and RFC. *See id.*; *see also Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).

The RFC is "what an individual can still do despite his or her limitations." S.S.R. 96–8p, 1996 WL 374184, at *2. It is an assessment "of the extent to which an individual's medically determinable impairment(s), including any related symptoms. . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical or mental activities." *Id.* The RFC reflects an individual's "*maximum* remaining ability to do sustained work activities." *Id.* The claimant bears the burden of proof at the first four steps of the evaluation. *Butler*, 353 F.3d at 997. At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform specific jobs available in the national economy. *Id.* The ALJ may ask a vocational expert to testify as to whether the claimant can perform other work due to her RFC. *Callahan v. Astrue*, 786 F. Supp. 2d 87, 90 (D.D.C. 2011).

**B.  Plaintiff's Disability Claims and Procedural History**

Plaintiff was born on July 18, 1961. AR at 40. She has a high school education and a Medical Assistant Certificate. *See* AR at 55 (Plaintiff testifying that her highest level of education was a Medical Assistant Certificate); *but see* AR at 280 (Plaintiff answering "No" on her Disability Report Form when asked if she had completed any type of specialized job training, trade, or

vocational school).  Plaintiff held various jobs from 2005 through 2009, including as a caregiver, resident counselor, and ticket taker.  AR at 57, 293.  On July 15, 2011, Plaintiff was in an accident and suffered a fracture dislocation of her left ankle.  ECF No. 13–1 at 2.  She underwent open reduction internal fixation surgery on July 16, 2011.[5]  *Id.*  Plaintiff did not follow up with her doctors after surgery because she lost insurance.  *Id.*  At the time of the administrative hearing, Plaintiff lived with her aunt and niece, both adult women.  AR at 67.

Plaintiff initially filed applications for Disability Insurance Benefits ("DIB") and SSI on August 15, 2011, and July 1, 2011, both of which were denied following an administrative hearing on November 16, 2012.  AR at 98, 108.  Plaintiff filed a second application for SSI benefits on August 22, 2017.  AR at 24.  Plaintiff alleged her disability began on April 1, 2017.  AR at 24. The Commissioner first denied Plaintiff's claims on May 11, 2018, and again upon reconsideration on August 8, 2018.  AR at 121, 131.  On September 27, 2018, Plaintiff filed a written request for a hearing, which the ALJ held on January 7, 2020.  AR at 51–79, 154.[6]

## C.  The Administrative Hearing

During the hearing, the ALJ heard testimony from Plaintiff and a vocational expert.  AR at 55–79.  Plaintiff testified that she is left-handed and carries her cane in her right hand so that she can keep her "one side up" if she loses her balance.[7]  AR at 62.  Plaintiff testified that she does not

---

[5]    Open reduction internal fixation surgery is used "to stabilize and heal a broken bone" by moving one's bones back into place. *Ankle Fracture Open Reduction and Internal Fixation*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/ankle-fracture-open-reduction-and-internal-fixation (last visited Feb. 8, 2024).

[6]    The hearing was initially scheduled to occur on September 5, 2019, but the SSA mailed the hearing notice to the incorrect address for Plaintiff.  AR 82–85.  The ALJ issued a show cause order and then rescheduled the hearing for January 7, 2020.  AR at 51.

[7]    Plaintiff testified that she was prescribed a cane for walking and balancing.  AR at 60. When the ALJ noted that Plaintiff had not provided any medical records reflecting a prescription for a cane, Plaintiff's counsel responded that it was "in the medical records to come."  AR at 60. At the request of Plaintiff's counsel, the ALJ held the record open for two weeks after the hearing

help her aunt and niece with cooking, cleaning, or shopping, and does not drive or go to social events.  AR at 68–69.  Plaintiff received Metro Access a year ago and currently uses it for transportation.[8]  AR at 69.  Plaintiff testified that her past position as a home attendant required physical exertion, including carrying "about 50 pounds" because many of her clients were in wheelchairs.  AR at 56–57.  Plaintiff also testified that, in her ticket taker position, she would "check […] passport[s]" and "boarding pass[es]" for people "before they board the planes."  AR at 57.

Plaintiff testified that she was in an accident in 2012 in which she broke her left ankle and received two plates and several screws in her leg.[9]  AR at 59.  Plaintiff testified that she has a pinched nerve in the bottom of her foot, which sometimes "gives out on [her]."  AR at 60.  She also testified that she can only walk for ten to fifteen minutes with a cane before taking a break and cannot balance without the cane for more than five minutes.  AR at 60–62; *see supra* note 9. Plaintiff noted that it takes her twenty to thirty minutes climb fifteen steps.  AR at 67.  She also testified that she has "very bad" arthritis pain in her left knee which worsens with changes in the weather.  AR at 62–64.  Plaintiff explained that this pain recently caused her to lose her balance

---

so that Plaintiff could submit additional records.  AR at 24, 54.  On January 29, 2020, a week after the record was closed, Plaintiff submitted medical records pertaining to a January 14, 2020, medical appointment.  AR at 24.  The ALJ did not consider that record because, among other things, it was submitted late and dealt with a medical appointment that occurred after the hearing. AR at 24–25.  Despite Plaintiff's testimony, other medical records contained within the Administrative Record and upon which the ALJ relied reflect that Plaintiff did not use an assistive device.  AR at 29–30, 368, 394.

[8]     Metro Access "is a shared-ride, door-to-door, paratransit service for people whose disability prevents them from using bus or rail."  Washington Metropolitan Area Transit Authority, Accessibility, https://www.wmata.com/service/accessibility/ (last visited Feb. 8, 2024).

[9]     It is unclear from the record or Plaintiff's testimony whether the 2011 accident and the 2012 accident are the same.  *Compare* ECF No. 13–1 at 2 (noting that Plaintiff was in an accident on July 15, 2011) *with* AR at 59 (Plaintiff testifying that she had an accident in 2012 in which she broke her left ankle).

and fall, which required a trip to the hospital.  AR at 63–64.  Plaintiff testified to some damage in

her left thumb and said she "[c]an't hold things too long."  AR at 64.  She explained that she has

trouble lifting anything above ten pounds.  AR at 64, 67.  She also testified that she has a nodule

on her thyroid, but did not know yet whether it was cancerous.  AR at 64–65.  She testified that

the thyroid medication she takes causes her to lose weight and makes her drowsy.  AR at 64–65.

Additionally, Plaintiff testified that because of the drowsiness, she has trouble paying attention

and staying on task.  AR at 65.  Finally, Plaintiff noted that she has an irregular heartbeat that

causes her to "get out of wind quick."  AR at 69.

After Plaintiff's testimony, the ALJ questioned Millie Droste, a vocational expert.  AR at

70–71.  Droste classified Plaintiff's past job as a home attendant as medium work, and Plaintiff's

past job as a ticket taker as light work.  AR at 58, 71.  The ALJ then asked Droste a series of

hypothetical questions about an individual of the same age, education, and work experience as

Plaintiff.  AR at 74–75.  The ALJ asked Droste if the hypothetical individual with the RFC the

ALJ formulated could perform Plaintiff's past relevant jobs with medium and light exertional level

limitations.  AR at 74–75.  The ALJ questioned Droste about a hypothetical individual with only

the following limitations:

> The individual can only occasionally push, pull, and use foot
> controls with the left lower extremity; can only frequently handle,
> finger and feel with the left lower extremity; can only frequently
> handle, finger and feel with the left and dominant hand; can only
> occasionally climb ramps and stairs, balance, stoop, kneel, crouch
> and crawl; can never climb ropes, ladders, and scaffolds and lastly
> can only occasionally be exposed to moving mechanical parts and
> unprotected heights.

AR at 73.  Droste testified that Plaintiff would be able to do the home attendant job as generally

performed if limited to a medium exertional level, but not as she performed it in the past.  AR at

73–74.  She also testified that if Plaintiff were limited to a light exertional level, she would be able

to perform the ticket taker position, but not the home attendant position.  AR at 74.  Droste testified that Plaintiff could not perform any past relevant work if her RFC was limited to a sedentary exertional profile.  AR at 74.  When asked about whether an individual's ability to perform work in a medium or light profile would change if they also needed a cane or assistive device, Droste testified that the individual with the profile the ALJ set forth already could only perform light work if they needed a cane to ambulate, and no work if they needed a cane for balance as well.  AR at 47–76.

**D.  The ALJ's Decision**

On February 5, 2020, the ALJ issued his decision finding that Plaintiff was not disabled and could perform her past relevant work.  AR at 32–34.  The ALJ laid out his findings for the five-step process.  AR at 24–38.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 22, 2017, the application date.  AR at 27.  At step two, the ALJ found that Plaintiff had the following severe impairments: (1) status post open reduction internal fixation of the left ankle; (2) left thumb malformation; and (3) osteoarthritis of the left knee.  AR at 27.  The ALJ found Plaintiff's diagnosis of hyperthyroidism to be non-severe because, according to the ALJ, Plaintiff's weight loss did not represent a significant reduction from the previous year, and there was no evidence that the condition caused more than a minimal limitation in her ability to perform basic work activities for a continuous period.  AR at 28.  Similarly, the ALJ found that Plaintiff's other diagnoses of diabetes mellitus, hypertension, and hyperlipidemia were not severe because they had no more than a minimal effect on her ability to perform basic work activities.  AR at 28.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of the one of the impairments in the Listings.[10]  AR at 28.  At steps four and five, the ALJ formulated Plaintiff's RFC and determined whether she could perform past relevant work. AR at 28–33.  Among other evidence, the ALJ considered examinations of Plaintiff conducted by Dr. Ajit Kurup ("Dr. Kurup") in November 2011 and Dr. Elizabeth Nolte ("Dr. Nolte") in May 2018.  *Id.*  At step four, the ALJ found that Plaintiff had the RFC to perform light work with the following exertional limitations:

> [Plaintiff] can only frequently handle, finger, and feel with the left and dominant hand.  She can only occasionally push, pull, and use foot controls with the left lower extremity.  She can only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds.  She can only occasionally be exposed to moving mechanical parts and unprotected heights.

*Id.* at 28.  The ALJ did not include any limitations on Plaintiff's ability to stand, walk, lift, or sit, despite the requirement an individual capable of light work must be able to perform "substantially all of [the] activities" in the definition of this classification.  20 C.F.R. § 516.967(b).

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that Plaintiff was "capable of performing her past relevant work" as a ticket taker.  AR at 32–33.

Due to his RFC assessment and conclusion that Plaintiff could perform her past relevant work, the ALJ found Plaintiff was not "disabled" under the Act and therefore denied her request

---

[10]   The "Listings" are various physical and mental conditions that are defined in terms of specific medical signs and symptoms and presumed severe enough to preclude gainful employment.  *See* 20 C.F.R. §§ 404.1520(a)(4), (d) 416.920(a)(4), (d); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (1989).

for SSI.  AR at 33–34.  The ALJ's decision became final when the Appeals Council denied Plaintiff's request for review on September 22, 2020.  AR at 1–6.

## **LEGAL STANDARD**

Federal district courts have jurisdiction to review final decisions of the Commissioner.  42 U.S.C. § 405(g).  The reviewing court must affirm the Commissioner's decision if it is based on substantial evidence in the record and the correct application of the relevant legal standards.  *Id.*; *Butler*, 353 F.3d at 999; *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987).  "Substantial evidence is 'more than a mere scintilla,' and means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Substantial evidence is a "low bar."  *La. Pub. Serv. Comm'n v. Fed. Energy Regul. Comm'n*, 20 F.4th 1, 7 (D.C. Cir. 2021).  It "requires considerable deference to the decision rendered by the ALJ."  *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995).

Still, a reviewing court must "carefully scrutinize the entire record to ensure that the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weight given to the facts."  *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 14 (D.D.C. 2009).  The ALJ's decision must include "a statement of . . . findings and conclusions, and the reasons or the basis therefor, on all material issues of fact, law, or discretion presented on the record."  5 U.S.C. § 557(c).  "Importantly, an ALJ cannot merely disregard evidence which does not support his conclusion."  *Hartline v. Astrue*, 605 F. Supp. 2d 194, 203 (D.D.C. 2009) (citing *Dionne v. Heckler*, 585 F. Supp. 1055, 1060 (D. Me. 1984)).

The plaintiff "bears the burden of demonstrating that the Commissioner's decision [is] not based on substantial evidence or that incorrect legal standards were applied."  *Settles v. Colvin*,

121 F. Supp. 3d 163, 169 (D.D.C. 2015) (quoting *Muldrow v. Astrue*, No. 11–1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012)); *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006).  The Court should affirm if it finds the ALJ based his decision on substantial evidence and applied the correct legal standards.  *See, e.g.*, *Hicks v. Astrue*, 718 F. Supp. 2d 1, 17 (D.D.C. 2010).

## <u>DISCUSSION</u>

Plaintiff argues that the ALJ's decision is not supported by substantial evidence and that he erred as a matter of law.  ECF No. 13–1 at 1.  First, Plaintiff claims that the ALJ erred when assessing Plaintiff's RFC because: (1) the ALJ failed to perform a function-by-function assessment of Plaintiff's ability to sit, stand, or walk as required for the light-work designation; and (2) the ALJ failed to properly evaluate pertinent evidence.  *Id.* at 4, 9.  Second, Plaintiff asserts that the ALJ erroneously evaluated Plaintiff's subjective complaints.  *Id.* at 11.  The Commissioner argues that "[t]he ALJ formulated an RFC that accounted for all of Plaintiff's credibly supported functional limitations after carefully considering her subjective complaints, as well as the objective medical evidence and the medical opinions of record."  ECF No. 15 at 7 (citing [ECF No. 15] at 28–32).  The Commissioner further argues that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints.  *See id.* at 11–15.

Upon review of the record, the Court finds that the ALJ erred in formulating Plaintiff's RFC.  Because the Court remands for a new hearing on these grounds, the Court will not address Plaintiff's claim about the ALJ's evaluation of her subjective complaints.  *See Saunders*, 6 F.4th at 5 (citing *Barry v. Astrue*, 622 F.3d 1228, 1234 n.3 (9th Cir. 2010)) ("Given our remand for a new hearing, we need not resolve [the other] claim[s].") (alterations in original).

I.  **The ALJ's RFC Assessment Lacks Substantial Evidence and Is Erroneous as a Matter of Law.**

Plaintiff argues that the ALJ failed to perform a proper function-by-function assessment of Plaintiff's ability to perform work-related activities, specifically "Plaintiff's abilities to sit, stand, walk, lift, or carry." ECF No. 13–1 at 6–9; ECF No. 17 at 1–5. Plaintiff also argues that the ALJ erred by failing to include any such limit in his RFC assessment despite finding opinions, including those by Drs. Nolte and Kurup, on Plaintiff's difficulty standing, walking, and/or walking on uneven surfaces persuasive and supported. ECF No. 13–1 at 10–11; ECF No. 17 at 1–5. Plaintiff faults the ALJ for failing to "explain his implicit rejection of Dr. Nolte's opinion that the Plaintiff avoid foot controls altogether" and exercising an expertise in orthopedics that the ALJ lacked. *Id.* Defendant argues the ALJ properly formulated an RFC that is "based on all of the relevant evidence, including medical records, medical source opinions, and the individual's subjective allegations and descriptions of his own allegations." ECF No. 15 at 9. Defendant also asserts that the ALJ did not err in how he evaluated Dr. Kurup's opinion, and that even if the ALJ did err in omitting Dr. Nolte's finding that Plaintiff should avoid foot controls, this is harmless error as Plaintiff has not shown foot controls are necessary for a ticket taker. *See id.* at 10–11.

A "function-by-function" analysis requires a "'narrative discussion' identifying the evidence that supports each conclusion." *Butler*, 353 F.3d at 1000 (quoting SSR 96–8p, 1996 WL 374184, at \*3, \*7). Courts in this Circuit use varying approaches to evaluate a function-by-function analysis under SSR 96–8p, 1996 WL 374184 (July 2, 1996).[11] Even if a court does not require "written articulation of all seven strength commands," the ALJ must still provide a

---

[11] Other opinions have discussed various approaches within this Circuit to the function-by-function analysis required in SSR 96–8p, 1996 WL 374184 (July 2, 1996). *See Contreras v. Comm'r of Soc. Sec.*, 239 F. Supp. 3d 203, 207 (D.D.C. 2017) (comparing *Johnson v. Astrue*, No. 11-788, 2012 WL 3292416 (D.D.C. Aug 12, 2012) *and Banks v. Astrue*, 537 F. Supp. 2d 75 (D.D.C. 2008) *with Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63 (D.D.C. 2006)); *Charles v. Astrue*, 854 F. Supp. 2d 22, 29–30 (D.D.C. 2012).

"thorough narrative discussion of Plaintiff's limitations" and build a "logical bridge" between the evidence and his conclusions. *Contreras v. Comm'r of Soc. Sec.*, 239 F. Supp. 3d 203, 207 (D.D.C. 2017) (quoting *Banks v. Astrue*, 537 F. Supp. 2d 75, 85 (D.D.C. 2008)); *see also Butler*, 353 F.3d at 1000; *Lane-Rauth*, 437 F. Supp. 2d at 67.[12]   Relevant evidence in the record includes medical records and source opinions, as well as the individual's subjective complaints about her condition. *See* 20 C.F.R. § 416.945.   When considering medical opinions, the ALJ must consider the supportability of each piece of evidence and consistency of the medical opinions across the record as a whole.   20 C.F.R. §§ 404.1520c, 416.920c; *see Nancy W. v. Kijakazi*, No. 20-2505 (MAU), 2023 WL 4846769, at *7 (D.D.C. July 28, 2023); *Shea M. v. Kijakazi*, No. 21-02204 (GMH) 2023 WL 3040602, at *10 (D.D.C. Apr. 21, 2023) (detailing changes in regulations governing how ALJs are to consider medical evidence for claims before and after March 27, 2017).[13]   An ALJ need not "encompass the entirety of his analysis in any particular paragraph of his decision," as long as he "provide[s] a sufficient basis for this Court to understand his reasoning when viewing the decision

---

[12]      Plaintiff notes that the Fourth Circuit has held that an RFC analysis must follow a specific order: consideration of (1) the evidence, followed by (2) a logical explanation, and ending with (3) a conclusion.   *Dowling v. Comm'r of Soc. Sec, Admin.*, 986 F.3d 377, 388 (4th Cir. 2021).   The D.C. Circuit has not considered or adopted the specific order that the Fourth Circuit recognized in *Dowling*.   Further, "'*Dowling* stops short of 'adopt[ing] a per se rule requiring remand where the ALJ does not perform an explicit-function-by-function analysis."'   *Jamil D. v. Kijakazi*, No. 21-cv-464 (GMH), 2022 WL 910334, at *11 n.10 (D.D.C. Sept. 29, 2022) (quoting *Dowling*, 986 F.3d at 388) (internal quotation omitted) (alteration in original).   Because D.C. Circuit precedent does not so require, this Court agrees with other courts in our Circuit that the ALJ's failure to follow the order in *Dowling* is, by itself, error.   *See id.*; *Kolter v. Kijakazi*, Case No. 20-cv-0632 (CKK), 2022 WL 715218, *8 (Mar. 10, 2022) ("Such opinion is not binding upon this Court and so shall be considered persuasive to the extent that the analysis contained therein warrants this Court's approval and does not conflict with the law of this Circuit.").

[13]      Because Plaintiff filed her SSI claim at issue on August 22, 2017, the updated regulations in 20 C.F.R. § 416.920c, not 20 C.F.R. § 416.927, govern the ALJ's review of medical opinion in her case.   *See* A.R. at 24; 20 C.F.R. § 416.325 (prescribing that an application for SSI benefits is generally deemed filed on the date an employee at any social security office, or other designated official, receives it).

as a whole." *Colter v. Kijakazi*, No. 2-0632 (CKK), 715218 WL 2022, at *11 (D.D.C. Mar. 10, 2022).

To satisfy the function-by-function requirement, the ALJ was required to provide a thorough narrative discussion that builds a logical bridge between the evidence and his conclusion. Here, however, the ALJ did not set forth findings on each of the strength demands for the "light work" classification in 20 C.F.R. § 967(b).[14]  Because the ALJ failed to explain why he disregarded evidence of any need for restrictions on Plaintiff's ability to walk, stand, or use foot controls, the assessment is inadequate.

The ALJ found two medical evaluations credible.  He acknowledged that both evaluations found Plaintiff had significant restraints on her ability to walk, balance, and stand due to her impairments.  The ALJ considered Dr. Kurup's findings, including that "claimant could stand and walk for 30 minutes to one hour with severe difficulty and pain of the left lower extremity."  AR at 30.  Even though this opinion was from 2011, the ALJ found it persuasive "to the extent it was consistent with available evidence at the time."  AR at 31–32.  The ALJ also considered Dr. Nolte's evaluation in 2018 at which Plaintiff reported that she could "walk 10 to 15 minutes, stand for 30 minutes, and that she ha[d] to stop after each flight when climbing stairs."  AR at 30.  The ALJ noted that Dr. Nolte concluded that Plaintiff "had a mild limitation in walking" and "indicated claimant should avoid prolonged walking, walking on uneven surfaces, and climbing."  AR at 31.

---

[14]     "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 416.967(b).

The ALJ did not discuss any medical opinion that contradicted these two opinions related to limits on Plaintiff's ability to walk or stand. Yet, the ALJ failed to (a) include any limitations on Plaintiff's ability to walk or stand in his RFC limitations, and (b) explain why he disregarded any limitations on Plaintiff's ability to walk or stand despite finding Dr. Kurup and Dr. Nolte's reports credible.

In addition, the ALJ found that Plaintiff had a "normal gait." AR at 30. But as the ALJ also acknowledged, Dr. Kurup reported that Plaintiff "exhibited a slow, antalgic gait" and "walked with a severe limp and was unable to flex her left ankle." AR at 29. Similarly, Dr. Nolte reported that Plaintiff "exhibited slow gait while looking at her feet as she ambulated." AR at 30. Yet, while citing Dr. Nolte and Dr. Kurup's reports, the ALJ found that "[d]espite having some degeneration of the left ankle and knee, claimant retains full range of motion, normal muscle strength, and *normal gait without mention of an assistive device*." *Compare* AR 31 (citing Ex. B6F/2–3; B7F/23–24) (emphasis added), *with* AR 394–395 ("Gait is slow. The claimant is looking at her feet while she walks. Able to walk on heels and toes with difficulty."), *and* AR 368 ("GAIT: Slow antalgic; walks with severe limp, unable to flex her left ankle, no use of assistive device. The patient uses an orthopedic brace on her left lower extremity.").

Defendant argues that the ALJ fully addressed evidence of any limitations to Plaintiff's ability to stand or walk. In support, Defendant cites several cases in this Circuit affirming an ALJ's RFC formulation where the ALJ explained the evidence it credited and rejected. *See* ECF No. 15 at 7 (citing *Banks*, 537 F. Supp. 2d at 85; *Cunningham v. Colvin*, 46 F. Supp. 3d 26, 36 (D.D.C. 2014)). But Defendant fails to show how this case is comparable. Nor does it point to any place in the record where the ALJ purportedly explained why he rejected evidence related to Plaintiff's ability to walk and stand. *See* ECF No. 15 at 9–10. The ALJ explained that he found no greater

14

restrictions than those listed in his RFC (which did not include any restrictions on walking or standing) due to contradictions in the record about the *severity* of Plaintiff's impairments. But the ALJ failed to address the *existence* of the impairments that impact Plaintiff's ability to stand and walk. Immediately after discussing Dr. Nolte's findings related to limits on Plaintiff's ability to walk, the ALJ simply stated "[i]n light of this, the undersigned has found the above physical limitations." AR at 31. In the next paragraph, the ALJ goes on to cite evidence[15] he finds weighs against the severity of Plaintiff's impairments, but neglects to explain how this evidence leads to his finding that no greater restrictions are necessary. Throughout the ALJ's entire decision, he only references the words "stand" or "walk" when discussing Plaintiff's complaints or the medical evaluations – never when he discusses his weighing of the evidence and formulation of Plaintiff's RFC. This leaves the Court to guess that the ALJ must have implicitly found the severity of Plaintiff's impairments be so minimal as to warrant no restriction on her ability to stand, walk, balance, or sit.

Courts in this Circuit have found error in similar circumstances. In *Contreras*, 239 F. Supp. 3d at 207–210, the court held that an ALJ's decision was not based on substantial evidence when it failed to provide a logical bridge between the evidence and the ALJ's conclusions. *See id.* The plaintiff in that case alleged that the ALJ failed to account for mental and physical limitations and side effects of the plaintiff's medications when formulating his RFC. *See id.* at 208. The court found that the ALJ's "discussion of Plaintiff's mental limitation caused by his pain and medication use falls far short of the standard outlined in *Banks*" to create a logical bridge between evidence and conclusions. *See id.* The ALJ acknowledged the plaintiff's allegations about impairments to

---

[15]     This includes the finding that Plaintiff has a "normal gait," which, as discussed, is inconsistent with the observations of Dr. Nolte and Dr. Kurup that the ALJ credits.

his mental functioning but did not draw a logical bridge between this testimony, the plaintiff's physician's opinion about pain related to sitting and standing, and the ALJ's conclusion that the plaintiff could perform work within his RFC as formulated.  *See id.* at 208–09.[16]  Further, the ALJ "pointed to no evidence or testimony that rebuts the specific allegations" in the physician's opinion that pain medication made it hard for the plaintiff to maintain mental focus.  *See id.* at 209.  As the court noted, it is clearly established in this Circuit that "'[t]he judiciary can scarcely perform its assigned review function, limited though it is, without some indication not only of what evidence was credited, but also whether other evidence was rejected rather than simply ignored.'"  *Id.* at 209–10 (quoting *Brown v. Bowen*, 794 F.2d 703, 708 (D.C. Cir. 1986)).

Similarly here, the ALJ gave no explanation for why he did not include any restriction on Plaintiff's ability to walk or stand in his RFC.  Nor did the ALJ build a logical bridge between Plaintiff's testimony, the two medical opinions the ALJ found credible, and his RFC determination that includes no mention of Plaintiff's ability to stand or walk.  Notably, this is not a case where the ALJ relied on other medical opinions that Plaintiff has no limitations on her ability to walk or stand.  Instead, the ALJ omitted any limitations on Plaintiff's ability to walk or stand even though the evidence he evaluated and apparently credited all included some degree of restriction or difficulty.

---

[16]     In *Caitlin O. v. Kijakazi*, No. 17-cv-1939 (JMC), 2023 WL 4744068, at *9–10 (D.D.C. July 25, 2023), the court distinguished *Contreras* from a case where the ALJ *had* provided a narrative explaining how, even though the plaintiff's severe impairments could cause the loss of function she claimed, "the medical evidence show[ed] evidence that her symptoms improved with treatment to the point where she [could not] demonstrate an inability to perform light work (with some modifications)."  The court noted how the ALJ in *Caitlin O.* built a logical bridge supported by substantial evidence by discussing how he weighed the record evidence, including the plaintiff's subjective complaints and evidence he found to conflict with the severity of the plaintiff's subjective complaints, to determine the RFC required no greater restriction.  *See id.*

These errors are not harmless, as the ALJ's finding that Plaintiff could perform prior relevant work and, therefore, was not disabled nor entitled to SSI benefits relied on the vocational expert's testimony about a hypothetical person with Plaintiff's RFC. *See* AR at 32-33 ("At the hearing, the Vocational Expert further testified that an individual with the above [RFC] could do the claimant's past work as it was generally performed in the national economy."). The ALJ considered the vocational expert's testimony about a hypothetical person being able to work as a ticket taker with some limitations on ambulation or walking. AR at 33. This testimony, however, does not render the ALJ's error harmless as: (1) the vocational expert explicitly considered an individual with the RFC as the ALJ formulated it; (2) this does not account for the vocational expert's testimony that an individual who needed an assistive device for balance would not be able to perform the position; and (3) the vocational expert did not opine on whether the hypothetical individual could work if the worker were limited to certain types, duration, or frequency of walking or standing.[17] Therefore, the ALJ's determination of Plaintiff's RFC renders this Court unable to perform its albeit limited review function and is not supported by substantial evidence.[18]

## CONCLUSION

---

[17]    The vocational expert testified that an individual with the RFC that the ALJ formulated could perform the work of a ticket taker even if they were "further limited to needing the assistance of a cane for ambulation; limited to walking on even terrain; could never operate foot controls with the left lower extremity; and could never be exposed to moving mechanical parts or unprotected heights." AR at 33. As stated above, however, this testimony still does not render the ALJ's error harmless as it only accounts for some possible limitations resulting from Plaintiff's impairments. For example, this testimony does not address restrictions on the length of time Plaintiff could walk or stand even though the ALJ found medical opinions finding such impairments credible. *See supra* at 13–14.

[18]    On remand, the ALJ may ultimately conclude that Plaintiff's RFC requires no greater restrictions, and/or that Plaintiff can perform her past work, but in reaching this determination, the ALJ must build a logical bridge between the evidence he finds credible and the RFC he ultimately formulates, including explaining why he disregards uncontroverted evidence about greater impairments.

For the foregoing reasons, Plaintiff's Motion for Reversal (ECF No. 13) is **GRANTED**, and Defendant's Motion for Affirmance (ECF No. 14) is **DENIED.**  This case is hereby remanded to the Commissioner for further administrative proceedings consistent with this Opinion, pursuant to 42 U.S.C. § 405(g).  A separate Order will issue.


Date: February 9, 2024

 

_____
MOXILA A. UPADHYAYA
United States Magistrate Judge